## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FLORRIE MCCARTHY,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Case No. 24-cv-10184-DJC** |
| ) | |
| **MASSACHUSETTS GENERAL BRIGHAM** ) | |
| **INCORPORATED,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                                                          **July 15, 2024**

### I.    Introduction

Plaintiff Florrie McCarthy ("McCarthy") has filed this lawsuit against Defendant Mass General Brigham Incorporated ("MGB") alleging a violation of the Americans with Disabilities Act ("ADA") (Count I) and the Genetic Information Non-Discrimination Act ("GINA") (Count II).  D. 1 at 6.  MGB has moved to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  D. 11.  For the reasons stated below, the Court ALLOWS the motion.

### II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (citation omitted).

**III.    Factual Background**

The Court draws the following factual allegations from the complaint, D. 1, and accepts them as true for the purpose of resolving the motion to dismiss.

McCarthy was a registered nurse employed by MGB.  D. 1 ¶ 5.  McCarthy received the first dose of the Moderna COVID-19 vaccine on January 8, 2021.  Id. ¶ 6.  Approximately one hour after the injection, she experienced numbness on the right side of her face and tingling around the nose and lips, which subsided after a few hours.  Id.  On February 8, 2021, McCarthy received the second dose of the Moderna COVID-19 vaccine and again experienced tingling and numbness on the right side of her face, including her mouth, lips and nose approximately an hour after the injection.  Id. ¶ 7.  Later that same day, she perceived a metallic taste in her mouth, which resolved but left her with diminished taste sensations.  Id.  McCarthy also developed numbness on the right side of her tongue, which has not yet resolved.  Id.   As alleged, the cause of these symptoms was not COVID-19.  Id. ¶ 8.  McCarthy asserts that her ongoing condition is a result of the COVID-19 vaccine that she received, noting that her doctors have been unable to identify any other cause.  Id.

On June 24, 2021, MGB announced a COVID-19 vaccination and booster shot policy (the "Vaccination Policy") as a condition for continued employment.  Id. ¶ 9.  The Vaccination Policy provided that "[w]orkforce members who have completed a primary vaccine series are required to

receive a COVID-19 Booster when eligible per the CDC guidance for the primary vaccine series,"
D. 13-1 at 2, and noted that employees could comply by receiving either a "Pfizer, Moderna, or
Janssen" booster shot.[1]  D. 13-1 at 3.  MGB declared that it would allow exemptions to the
requirement for "medical contraindications."  Id. at 2.  McCarthy did not want to receive the
COVID-19 booster because she believed she had suffered harm as a result of her prior COVID-19
vaccines and feared that being injected with a booster would cause further harm.  D. 1 ¶ 10.  On
June 2, 2022, McCarthy submitted a request for a medical exemption accompanied with notes from
medical providers in support of same.  Id. ¶¶ 11-12.  On July 12, 2022, MGB denied her request,
explaining that the medical information provided "d[id] not demonstrate a sufficient medical
reason or contraindication to support an exemption." Id. ¶ 13.  On July 27, 2022, MGB terminated
McCarthy, citing non-compliance with the COVID-19 Vaccination Policy, namely her failure to
receive a COVID-19 booster.  Id. ¶¶ 14-15.

## IV.    Procedural History

McCarthy filed this action on January 24, 2024.  D. 1.  MGB has now moved to dismiss.
D. 11.  The Court heard the parties on the pending motion and took this matter under advisement.
D. 19.

## V.    Discussion

### A.    ADA Claim (Count I)

McCarthy alleges that MGB failed to provide her a reasonable accommodation by denying
her medical exemption from the COVID-19 Vaccination Policy.  D. 1 at 6.  To prove a reasonable
accommodation claim under the ADA, McCarthy must plausibly allege that (1) "she suffers from
a disability as defined by the ADA," (2) she nevertheless could "perform the essential functions of

---

[1] The Court has considered the Vaccination Policy because it was incorporated by reference in the
complaint.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

her job, with or without reasonable accommodation," and (3) MGB "knew of her disability but did not reasonably accommodate it upon [her] request." Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 (1st Cir. 2010).

    *1.*  *McCarthy has not alleged that she suffers from a disability under the ADA*

   An individual is disabled for purposes of the ADA if "[s]he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Román-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 48 (1st Cir. 2011). McCarthy claims that she satisfies the first definition, or, in the alternative, the third definition of disability under the ADA. D. 14 at 2, 4.

     a)  Actual Disability

   To assess whether McCarthy has pled a disability under the first definition of the ADA, the Court must determine, based on the allegations of the complaint, (1) whether McCarthy has a physical impairment, (2) "[w]hat, if any, major life activity is implicated," and (3) whether "the impairment substantially affect[s] the identified major life activity." Navarro v. Pfizer Corp., 261 F.3d 90, 96 (1st Cir. 2001). The Equal Employment Opportunity Commission ("EEOC") regulations, which interpret the ADA, define a physical impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1); Mancini v. City of Providence, 909 F.3d 32, 40 (1st Cir. 2018).

   McCarthy argues that her allegation of partial numbness of her tongue, D. 1 ¶ 7, constitutes a physical impairment. D. 14 at 2-3. Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), which "rejected the strict standards imposed on the definition of 'disability' by the

Supreme Court and the EEOC" and "specifically admonished that '[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals.'"  Mancini, 909 F.3d at 40 (alterations in original) (quoting 42 U.S.C. § 12102(4)(A)).  Under the plain language of the EEOC regulations, McCarthy appears to suggest that the alleged, partial numbness of her tongue is a "physiological disorder or condition . . . affecting. . . special sense organs."  29 C.F.R. § 1630.2(h)(1).  MGB argues that "to establish the existence of a 'physical impairment' under the ADA, [McCarthy] must show that her *symptoms* . . . were caused by 'an underlying physiological disorder or condition.'"  D. 18 at 3 (emphasis in original).  In support of this contention, MGB cites Bush v. Acton-Boxborough Reg'l Sch. Dist., No. 1:21-cv-12039-IT, 2023 WL 3605440 (D. Mass. May 23, 2023), Morriss v. BNSF Ry. Co., 817 F.3d 1104 (8th Cir. 2016) and Richardson v. Chicago Transit Auth., 926 F.3d 881 (7th Cir. 2019).  Bush is distinguishable, but Morriss and Richardson are more helpful to consider here.

The plaintiff in Bush alleged that his "disability [was] 'bacterial infections' caused by wearing a mask."  Bush, 2023 WL 3605440, at *3.  The court concluded that "[i]nfections caused by mask-wearing are not themselves an underlying 'physiological order [sic] or condition'" because such "short-lived afflictions . . . are not disabilities for purposes of the ADA."  Id.  Here, however, unlike Bush, McCarthy has alleged that the partial numbness of her tongue is ongoing and not merely temporary.  D. 1 ¶ 7; D. 14 at 2-3.  The rulings in Morriss and Richardson are more persuasive given the allegations in this case.  In those cases, the courts concluded that obesity does not qualify as a physical impairment under the ADA unless it is caused by an underlying physiological disorder or condition.  Morriss, 817 F.3d at 1108-09; Richardson, 926 F.3d at 887-90.  Both Morriss and Richardson relied upon the EEOC interpretive guidance, which provides that "[i]t is important to distinguish between conditions that are impairments and physical,

psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. Part 1630, Appendix § 1630.2(h). Accordingly, "for obesity to qualify as a physical impairment--and thus a disability—under the ADA, it must result from an underlying physiological disorder or condition." Morriss, 817 F.3d at 1109; Richardson, 926 F.3d at 891. The same is true here where there is no underlying disorder or condition alleged.

Moreover, McCarthy also fails to allege that any major life activity is implicated by her physical impairment. The ADA defines "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). In her opposition, McCarthy moves for leave to amend the complaint to allege that the numbness of her tongue substantially limits her eating and speech. D. 14 at 1. MGB correctly argues that McCarthy "cannot amend her [c]omplaint via opposition briefing." D. 18 at 4 (citing Velasquez v. Bos. Hous. Auth., No. 17-12481-PBS, 2018 WL 3912360, at *2 (D. Mass. Aug. 14, 2018)). Even if McCarthy was allowed to amend the complaint in this regard, she would still fail to state a claim due to lack of connection between this alleged disability and the reasonable accommodation sought as discussed further below.[2]

---

[2] To the extent that the complaint can be read to allege that her disability is a reaction to the mRNA vaccine, see D. 1 ¶ 15, McCarthy also fails to plead plausibly that such reaction is a physical impairment that substantially limits a major life activity.

a)      "Regarded As" Having a Disability

In the alternative, McCarthy claims that MGB regarded her as having an impairment because it "perceived [her] as being more susceptible to catching COVID-19 than employees who had received the [COVID-19 booster]."  D. 1 ¶¶ 16-17.  To plead a disability under the "regarded as" prong of the ADA definition, a plaintiff must allege "that [s]he had an actual or perceived impairment and that [er] employer was either aware of or perceived the impairment at the time of the allegedly discriminatory action."  Mancini, 909 F.3d at 46.  As MGB notes, D. 12 at 13, and McCarthy concedes, D. 14 at 5, other courts have dismissed claims based on the theory that unvaccinated employees may be regarded as having an impairment.  See Sharikov v. Philips Med. Sys. MR, Inc., 659 F. Supp. 3d 264, 278 (N.D.N.Y. 2023) (concluding that "[t]he allegation that Defendant perceived Plaintiff as potentially infectious fails to plausibly allege a claim that the that Defendant regarded Plaintiff as having an impairment"), aff'd, 103 F.4th 159 (2d Cir. 2024) (noting that plaintiff "does not explain how adopting measures to prevent the spread of a communicable disease implies an impairment, and he cites no case law equating prophylactic measures with assumptions of disability"); Equal Emp. Opportunity Comm'n v. STME, LLC, 938 F.3d 1305, 1315 (11th Cir. 2019) (concluding "that the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future"); DiOrio v. Nat'l Educ. Ass'n, No. 23-246 WES, 2023 WL 7300080, at *11 (D.R.I. Nov. 6, 2023) (holding that "[a]n employee's heightened risk of contracting COVID-19 because she did not receive the vaccine cannot be 'regarded as' a disability"); Jorgenson v. Conduent Transp. Sols., Inc., No. SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (concluding that vaccination status is not an impairment and the employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status . . . does not plausibly reflect a determination or belief that any of its

7

employees are disabled or impaired"), aff'd, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023); Earl v. Good Samaritan Hosp. of Suffern, No. 20-cv-3119 (NSR), 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (ruling that plaintiff "failed to plausibly allege that the [employer] perceived him to be disabled based on his potential to infect patients with COVID-19" because "perception of infectiousness is not the same as perceived disability").

The Court agrees with these cases because "inferring 'that [Defendant] regarded [a plaintiff] as having a disability would require inferring that [Defendant] regarded all of its [] employees as having a disability.'"  Sharikov, 659 F. Supp. 3d at 279 (alterations in original) (quoting Shklyar v. Carboline Co., 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022)).  For all of the aforementioned reasons, McCarthy has not plausibly pled that MGB regarded her as having an impairment.

### 2.   McCarthy has not alleged that MGB failed to reasonably accommodate her

Even assuming *arguendo* that McCarthy has pled a disability under the ADA, she has failed to allege that MGB failed to reasonably accommodate such disability upon request.  In her request for an accommodation, a plaintiff "must explain how the accommodation is linked to plaintiff's disability."  Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012).  As alleged, McCarthy's requested accommodation was an exemption from MGB's COVID-19 booster vaccination policy.  D. 1 ¶ 11.  The complaint does not allege a connection between the alleged impairment, namely the reaction to mRNA vaccines or the partial numbness of her tongue, and the requested vaccine exemption.  See Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 434 (D. Mass. 2021) (holding that "where the claimed disability is not a contraindication for the vaccine, the requested accommodation does not sufficiently relate to the claimed disability"), aff'd, 32 F.4th 82 (1st Cir. 2022).  McCarthy also fails to allege why an exemption from the

Vaccination Policy would be a reasonable accommodation to a negative reaction to mRNA vaccines where the policy allowed for the receipt of a the Janssen vaccine, a non-mRNA booster. D. 18 at 5-6.  Even assuming McCarthy had pled a disability, she fails to allege that an exemption to the vaccine was a reasonable accommodation for same.  Accordingly, the Court allows the motion to dismiss as to Count I.

### B.    GINA Claim (Count II)

GINA prohibits, *inter alia*, the discharge of or discrimination against an employee "because of genetic information," 42 U.S.C. § 2000ff-1(a)(1), which is defined as "information about (i) [an] individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual."  42 U.S.C. § 2000ff(4)(A).  A genetic test "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes."  42 U.S.C. § 2000ff(7)(A).  McCarthy claims that requiring evidence of her vaccination status is a genetic test within the meaning of GINA.  D. 1 ¶ 22.  As MGB notes, D. 12 at 20, and McCarthy concedes, D. 14 at 7, numerous courts have rejected such contention.  See Ries v. City of Chicago, No. 22 C 2740, 2023 WL 6126726, at *1-2 (N.D. Ill. Sept. 19, 2023) (holding that "COVID-19 vaccination status does not constitute genetic information under GINA and therefore Plaintiff fails to make a claim upon which relief may be granted"); Anderson v. United Airlines, Inc., No. 23 C 989, 2023 WL 5721594, at *8 (N.D. Ill. Sept. 5, 2023) (same); Russo v. Patchogue-Medford Sch. Dist., No. 22-cv-01569(HG)(SIL), 2024 WL 149131, at *6 (E.D.N.Y. Jan. 12, 2024) (holding that "Defendant did not violate GINA by requesting that Plaintiff . . . show proof of having received a COVID-19 vaccine"); Harden v. Honeywell Int'l, Inc., No. 1:23-cv-00176-JPB, 2023 WL 3310172, at *4 (N.D. Ga. May 8, 2023) (dismissing GINA claim where plaintiff fails to allege that vaccination status meets the statutory definition of genetic information).

The complaint includes only a conclusory allegation that proof of vaccination "constitutes a test of human DNA, RNA, mitochondrial DNA, chromosomes, or proteins for the purpose of identifying the presence or absence of inherited or acquired characteristics in genetic material." D. 1 ¶ 22.  Although this language invokes a paraphrasing of the statutory definition of "genetic test," there are no allegations which explain how proof of receipt of a mRNA booster reveals any genetic information about an individual.  Such assertion is insufficient to state a claim of discrimination under GINA.  Accordingly, the Court allows the motion as to Count II.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS MGB's motion to dismiss, D. 11.

**So Ordered.**

/s Denise J. Casper
United States District Judge
